T. G. GAYLORD'S TRUSTEES *v.* NELSON & NELSON.

T. G. GAYLORD'S TRUSTEES *v.* FISK & FISK.

[Abstract Kentucky Law Reporter, Vol. 7—821.]

**Attorneys' Fees and Lien on Fund.**

Where attorneys are employed by one claiming a reversionary title to property and are successful, but before the fund is actually received by the claimant his assignees bring action against him to recover the fund, they can not prevent the attorneys of the claimant from being paid out of the fund by asserting that it has always belonged to the assignees and that they did not employ the attorneys.

**Attorneys' Lien.**

Where attorneys are employed and their efforts results in creating a fund, they have a lien upon it for the reasonable value of their services.

**Amount of Attorneys' Fees, How Determined.**

In determining the fees due attorneys for services in creating or preserving a fund this court will have recourse to the evidence introduced to show their value, and also to what is shown by the record they have done.

APPEALS FROM CAMPBELL CHANCERY COURT.

May 13, 1886.

OPINION BY JUDGE HOLT:

Thomas G. Gaylord in 1871 by deed dedicated to the Union Bethel Church for certain uses some real estate in the city of Newport, reserving a reversionary interest in it in the event the church trustees should fail at any time to use it for the specified purposes.

On October 28, 1873, he made an assignment for the benefit of his creditors. In 1874, in a suit between him and the church, he by a cross-petition claimed the property on the ground that it had been perverted from the dedicatory purposes. It was sold on May 9, 1876, under an order entered on October 1, 1875, for the sum of $9,000, the sale bonds being made payable to the court's commissioner. Out of the fund a purchase-money lien, amounting to $2,600, and as to which there was no question, was discharged, leaving $6,400, and on September 4, 1878, it was adjudged to Gaylord upon the ground that his contingent reversionary interest had vested in him. On October 4, 1878, his assignees brought this action against him, claiming the fund.

The appellees to these two appeals, Fisk & Fisk and Nelson & Nelson, were made defendants to this action, as they were asserting liens against the fund for fees for services rendered by them as the attorneys of Gaylord in the suit to recover the property, and to which the trustees were not parties. The lower court allowed $500 to the appellees, Nelson & Nelson, and $1,000 to the appellees, Fisk & Fisk; and from these judgments the trustees have appealed, while the appellees, Fisk & Fisk, by a cross-appeal complain because they were not allowed interest upon the sum adjudged to them either from the date of the sale or from the time when they filed their answer and cross-petition asserting their lien. While their claim for a fee was by the statute a lien upon the judgment, yet it was in form an open account until allowed; and the allowance or nonallowance of interest was discretionary with the court. The trustees object to each allowance upon the grounds, first, that the property by virtue of the deed of trust belonged to them when Gaylord asserted claim to it, and that the appellees were not employed by them, but by Gaylord, if by any one, and so they must look to him individually for their pay; second, that the judgments were excessive, as the Nelsons never performed any service whatever, and the Fisks by a contract with Gaylord were to attend to the case for $500.

While the trustees are as to Gaylord entitled to the benefit of the recovery by virtue of the deed of trust, yet he had an interest in the property because the trustees were bound to pay over to him any surplus of assets remaining after the payment of the debts; and if the recovery had been in their names they would only have been required to account for the amount of it after the payment of all the costs.

They are now in a court of equity, asking that the fund which has been obtained by reason of the rendition of the services of the appellees, and upon which the statute gives them a lien for their fees, be awarded to them. The services have been useful to them; they receive the benefit of them; and they must do equity before it can be extended to them by the chancellor. They should not, therefore, be allowed to receive the fund from his hands without paying the costs attending its recovery. The testimony clearly shows that the Nelsons did render some services in the case. They were not retained, however, until the cause had been entirely prepared, briefed by the Fisks and submitted in the lower court. All they claim to have done is that they examined the record, the brief and the authorities, and came to the conclusion that all necessary steps had been taken in the case. It is true that several witnesses say that this service was worth $500. One, however, testifies that the services of the Fisks were worth $1,000, and that the fee of the Nelsons should be from one-fourth to one-third as much.

The lower court made the allowance to the last named attorneys in 1881, and in conformity to the order it was paid to them out of the fund then in court in 1883, and the cause was referred to a commissioner to report upon the value of the services and by whom they had been rendered; and he reported that the Fisks had performed all the services and were entitled to $1,000. The Nelsons, however, having been then paid under the judgment in their favor, which is now in question, are not bound by the report, and it is apparent that they did render some service. The entire record of the suit in which they did so is not before us. It appears, however, from the testimony that it could not have been a very large one. The brief of the Fisks discussing the legal questions was already on file; and whatever allowances are made must be paid out of an insolvent estate. Occupying as we do the position of a chancellor, we have a right to judge of the reasonableness of an allowance from the character of the case and the record itself, as

well as the opinions of the witnesses, and in the light of all the facts we are of the opinion that the Nelsons should not have been allowed over $250.

When the Fisks were retained there was no agreement as to their fee. There is proof, however, tending to show that after the cause had been submitted but before a decision had been rendered in the lower court, J. F. Fisk of the firm of Fisk & Fisk and Gaylord agreed upon $500, for which in the language of the witnesses "they were to see the case through." Gaylord so testifies, and he is supported by his father-in-law. If they are correct in so stating then it is still uncertain whether the amount named was to be the fee to "see the case through" the court in which it was then pending, or if appealed, as it was, until it was ended. It is urged that they are supported in their testimony by the fact that C. H. Fisk, the junior member of the Fisk firm, made out a fee bill against Gaylord for $500 "for services in cause No. 869 of *Union Bethel Church v. T. G. Gaylord.*" It does not appear when this was done, but it was certainly prior to September 29, 1876, because it was presented to the commissioner for allowance and his report was filed at the date named. The judgment in favor of Gaylord was not rendered until Setpember 4, 1878; and the evidence tends to show that the purpose of the fee bill was to procure its payment out of the fund then in court upon the idea that it was as much entitled to be so paid as if the trustees had been the claimants and the Fisks their attorneys. The testimony of Gaylord and his father-in-law is contradicted by that of J. F. Fisk, who says that if anything was said as to $500 it was an allusion to the effort that had been made to get an allowance out of the fund in court.

It is difficult to reconcile the testimony and the attending circumstances so as to reach a conclusion upon this question which will be certainly correct. Upon the one side it was believed that the fee was $500; upon the other that they were to be paid whatever sum might be reasonable for services. Under these circumstances it is right to do what appears to us to be equitable and just between the parties. There is testimony showing that the fee of $1,000 is reasonable; but as already observed we will upon such a question take into consideration the amount recovered, any allowance to other attorneys, and the character of the record and case. It is proper also to recollect that the testimony shows that the case was appealed to this court; and that, while the same brief was filed

here that had been filed by the Fisks in the lower court, yet they were looking to the case upon the appeal. Hence if the alleged agreement as to a $500 fee was satisfactorily established we should be inclined to allow them something additional to it. Under all the circumstances they should have been allowed $750. This sum, together with the $250 to the Nelsons, is about one-sixth of the $6,400 recovered; and the judgments appealed from are reversed with directions to allow the Nelsons $250 and the Fisks $750, and for further proceedings in conformity to this opinion. The judgment is *affirmed* upon the cross-appeal of Fisk & Fisk.

*O. W. Root, A. T. Root, for appellants.*

*O'Hara & Bryan, Nelson & Nelson and Fisk & Fisk, for appellees.*